Slip Op. 11-19

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES STEEL CORPORATION**, <br><br> Plaintiff, <br><br> and <br><br> **NUCOR CORPORATION**, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **UNION STEEL**, **POSCO**, **POHANG COATED STEEL CO., LTD.**, and **HYUNDAI HYSCO**, <br><br> Defendant-Intervenors. | **Before: Timothy C. Stanceu, Judge** <br><br> **Consol. Court No. 09-00156** |

## OPINION AND ORDER

[Remanding for reconsideration and redetermination the final results of an administrative review of the antidumping order on certain corrosion-resistant carbon steel flat products from the Republic of Korea]

Dated: February 15, 2011

*Skadden, Arps, Slate, Meagher & Flom, LLP* (*Jeffrey D. Gerrish* and *Stephen J. Narkin*) for plaintiff United States Steel Corporation.

*Wiley Rein, LLP* (*Timothy C. Brightbill*, *Lori E. Scheetz*, and *Alan H. Price*) for plaintiff-intervenor Nucor Corporation.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*); *Daniel J. Calhoun*, Office of the Chief Counsel for

Import Administration, United States Department of Commerce, of counsel, for defendant United States.

*Troutman Sanders LLP* (*Donald B. Cameron*, *Julie C. Mendoza*, *R. Will Planert*, *Brady W. Mills*, and *Mary S. Hodgins*) for defendant-intervenor Union Steel.

*Akin, Gump, Strauss, Hauer & Feld, LLP* (*Jaehong D. Park*, *Bryce V. Bittner*, *Jarrod M. Goldfeder*, *Lisa-Marie W. Ross*, and *Natalya D. Dobrowolsky*) for defendant-intervenors POSCO and Pohang Coated Steel Co., Ltd.

*Akin, Gump, Strauss, Hauer & Feld, LLP* (*Jaehong D. Park*, *Bryce V. Bittner*, *Jarrod M. Goldfeder*, *Lisa-Marie W. Ross*, and *Natalya D. Dobrowolsky*) for defendant-intervenor Hyundai Hysco.

Stanceu, Judge:  Plaintiff United States Steel Corporation ("U.S. Steel"), a domestic manufacturer of corrosion-resistant carbon steel flat products ("CORE"), brought this action under section 516A of the Tariff Act of 1930 ("Tariff Act" or the "Act"), 19 U.S.C. § 1516a (2006), to contest a determination (the "Final Results") that the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department") issued in the fourteenth periodic administrative review of an antidumping duty order on imports of certain CORE from the Republic of Korea ("subject merchandise").  U.S. Steel Compl. ¶¶ 1, 3; *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Final Results of the Fourteenth Admin. Review & Partial Rescission*, 74 Fed. Reg. 11,082 (Mar. 16, 2009) ("*Final Results*").  In an action (Court No. 09-00152) consolidated with that brought by U.S. Steel, Nucor Corporation ("Nucor"), a domestic manufacturer of CORE, also contested the Final Results.

Before the court are U.S. Steel's and Nucor's Rule 56.2 motions for judgment upon the agency record.  U.S. Steel claims that Commerce, when determining the cost of production of subject merchandise produced by respondent Union Steel Manufacturing Co., Ltd. ("Union"),

acted in disregard of its own regulation in declining to adjust data pertaining to the costs Union

incurred in obtaining from suppliers affiliated with Union a production input, "steel substrate"

(carbon steel coil used to make the subject merchandise), based on a finding that any such

adjustment would be negligible. Mem. in Supp. of Pl.'s Mot. for J. on the Agency R. under

Rule 56.2, at 2 ("U.S. Steel Mem."). Nucor objects to other decisions Commerce made affecting

the valuation of Union's purchases of steel substrate from suppliers affiliated with Union. Br. in

Supp. of Nucor Corp.'s Rule 56.2 Mot. 1 ("Nucor Br.") . Nucor also claims that Commerce

erred in determining that Pohang Iron & Steel Co., Ltd. ("POSCO") and Pohang Coated Steel

Co., Ltd. (collectively, the "POSCO Group"), producers of subject merchandise affiliated with

Union, should not be "collapsed" with Union, *i.e.* treated as a single entity, for purposes of the

administrative review. *Id.* at 2.

Defendant voluntarily requests a remand order under which the Department would

reconsider its determination that potential adjustments to Union's reported costs for acquiring

steel substrate should be disregarded as negligible. Def.'s Resp. to Pls.' Mot. for J. upon the

Agency R. 1-2 ("Def. Resp.") . U.S. Steel supports the government's remand request, which the

court will grant. Reply Br. in Supp. of Pl.'s Mot. for J. on the Agency R. under Rule 56.2, at 2.

With one exception, the court finds merit in Nucor's claims and includes in the remand order

instructions under which Commerce must address these claims.

## I. BACKGROUND

Commerce published the antidumping duty order on corrosion-resistant carbon steel flat

products in 1993. *Antidumping Duty Orders on Certain Cold-Rolled Carbon Steel Flat Products*

*& Certain Corrosion-Resistant Carbon Steel Flat Products From Korea*, 58 Fed. Reg. 44,159

(Aug. 19, 1993). On September 25, 2007, Commerce initiated the fourteenth review of the order, which pertains to imports of subject merchandise made during the period of August 1, 2006 through July 31, 2007 (the "period of review"). *Initiation of Antidumping & Countervailing Duty Admin. Reviews & Requests for Revocation in Part*, 72 Fed. Reg. 54,428, 54,428 (Sept. 25, 2007). On September 9, 2008, Commerce issued the preliminary results of the review ("Preliminary Results"). *Certain Corrosion-Resistant Carbon Steel Flat Products From the Republic of Korea: Notice of Prelim. Results of the Antidumping Duty Admin. Review*, 73 Fed. Reg. 52,267 (Sept. 9, 2008) ("*Prelim. Results*"). Following publication on March 16, 2009 of the Final Results, 74 Fed. Reg. at 11,082, U.S. Steel and Nucor instituted the current actions. U.S. Steel Compl.; Nucor Compl.

## II. DISCUSSION

The court exercises jurisdiction pursuant to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which grants the Court of International Trade exclusive jurisdiction over any civil action commenced under 19 U.S.C. § 1516a. The court reviews the Final Results based on the agency record. *See* Customs Courts Act of 1980, § 301, 28 U.S.C. § 2640(b); 19 U.S.C. § 1516a(b)(1)(B)(i). The court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

A.  Remand Is Appropriate to Allow the Department to Reconsider Its Finding that Potential
     Adjustments to Union's Steel Substrate Costs Should Be Disregarded as Negligible

Commerce may "decline to take into account adjustments which are insignificant in

relation to the price or value of the merchandise."  Tariff Act, § 777A(a)(2), 19 U.S.C.

§ 1677f-l(a)(2).  The Department's regulations, in 19 C.F.R. § 351.413 (2007), set forth a

standard of less than 0.33% *ad valorem* that Commerce ordinarily applies to determine whether

an adjustment is insignificant.[1]

U.S. Steel challenges the Department's valuation of steel substrate that Union purchased

from affiliated suppliers.  U.S. Steel Mem. 2.  U.S. Steel argues that under both the "transactions

disregarded rule" of section 773(f)(2) of the Tariff Act, 19 U.S.C. § 1677b(f)(2), and the "major

input rule" of section 773(f)(3) of the Tariff Act, 19 U.S.C. § 1677b(f)(3), Commerce erred in

valuing an input obtained from affiliated suppliers using the transfer prices, which U.S. Steel

alleges to have been lower than the market prices.  U.S. Steel Mem. 12.[2]  U.S. Steel claims that

---

[1] The regulation provides that,
Ordinarily, under section 777A(a)(2) of the Act [(*i.e.*, 19 U.S.C. § 1677f-1)], an
"insignificant adjustment" is any individual adjustment having an *ad valorem* effect
of less than 0.33 percent, or any group of adjustments having an *ad valorem* effect of
less than 1.0 percent, of the export price, constructed export price, or normal value,
as the case may be.  Groups of adjustments are adjustments for differences in
circumstances of sale under § 351.410, adjustments for differences in the physical
characteristics of the merchandise under § 351.411, and adjustments for differences
in the levels of trade under § 351.412."
19 C.F.R. § 351.413 (2007).

[2] In the "transactions disregarded" rule, the antidumping law provides that,
A transaction directly or indirectly between affiliated persons may be disregarded if,
in the case of any element of value required to be considered, the amount
representing that element does not fairly reflect the amount usually reflected in sales
of merchandise under consideration in the market under consideration.
19 U.S.C. § 1677b(f)(2) (2006).  The "major input" rule provides that,

(continued...)

Commerce should have made an upward adjustment to those prices and unlawfully disregarded

the standard of 19 C.F.R. § 351.413 in deciding to disregard any adjustment as insignificant.

*Id*. at 12, 19.

Defendant responds by stating that "because Commerce's finding that certain potential

adjustments under the major input rule and transactions disregarded rule were negligible may

have been based on erroneous calculations, we respectfully request a remand to reexamine the

accuracy of those calculations, to make any necessary corrections to those calculations, and to

reconsider, if appropriate, the treatment of those adjustments." Def. Resp. 6. The court

concludes that Commerce should be granted the opportunity on remand to reconsider the

decision to disregard the adjustments as negligible and to make all changes that may be required

to resolve this issue in accordance with the antidumping statute and regulations.

B. Upon Remand, Commerce Must Reconsider its Decision Not to Apply the Major Input Rule
to Union's Purchases of Steel Substrate from the POSCO Group

In the Final Results, Commerce applied the major input rule to only one of Union's

related suppliers of steel substrate. Issues & Decisions Mem., A-580-816, ARP 3-09, at 20

(Mar. 9, 2009) (Admin. R. Doc. No. 4868) ("*Decision Mem.*"); *Final Results*, 74 Fed. Reg.

at 11,083. Nucor claims that Commerce erred in declining to apply the major input rule to

_____

[2](...continued)
> If, in the case of a transaction between affiliated persons involving the
> production by one of such persons of a major input to the merchandise, the
> administering authority has reasonable grounds to believe or suspect that an
> amount represented as the value of such input is less than the cost of
> production of such input, then the administering authority may determine the
> value of the major input on the basis of the information available regarding
> such cost of production, if such cost is greater than the amount that would be
> determined for such input under paragraph (2) [19 U.S.C. § 1677b(f)(2)].

19 U.S.C. § 1677b(f)(3).

Union's steel substrate purchases from all other suppliers related to Union, including the POSCO Group. Nucor Br. 10. In the issues and decisions memorandum that Commerce incorporated by reference in the Final Results ("Decision Memorandum"), *Final Results*, 74 Fed. Reg. at 11,083, Commerce based its decision not to apply the major input rule to the POSCO Group on a finding of fact that "the record shows that the POSCO Group, and certain other affiliated suppliers, accounted for insignificant percentages of Union's total purchases of substrate during the POR." *Decision Mem.* 20. With respect to the POSCO Group, Nucor cites to record evidence demonstrating that Union's purchases of steel substrate from the POSCO Group were not insignificant as a percentage of Union's total substrate purchases. Nucor Br. 10 ("This determination was mathematically incorrect and therefore unsupported by substantial evidence."). Defendant now concedes that the Department erred in stating in the Decision Memorandum that Union's purchases from the POSCO Group were an insignificant percentage of Union's total substrate purchases, describing that finding as an "inadvertent error." Def. Resp. 13. According to defendant's argument, the real reason that Commerce declined to apply the major input rule to these purchases was that "there was insufficient information on the record to conduct a major input analysis." *Id.* Defendant adds that "[i]n its proprietary calculation memorandum, Commerce fully explains the reasons why it declined to apply the major input rule to the POSCO Group purchases." *Id.*

The court is required to review a determination of an agency on the basis of the reasoning the agency puts forth. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

The Decision Memorandum, unlike the "proprietary calculation memorandum" to which defendant refers therein, is incorporated by reference into the Final Results and, therefore, presents the reasoning on which the court must consider the Department's decision not to apply the major input rule to the POSCO Group. Because that reasoning is based on a finding of fact that is, as defendant concedes, unsupported by substantial record evidence, the decision not to apply the major input rule to the valuation of Union's purchases of substrate from the POSCO Group must be reviewed and reconsidered on remand.

C. On Remand, Commerce Must Reconsider, and Explain Satisfactorily, its Method of Applying the Major Input Rule to Value the Steel Substrate that Union Obtained from JFE Steel through Purchases from a Trading Company Affiliated with Union

The one supplier of steel substrate affiliated with Union to which Commerce applied the major input rule, JFE Steel, sold to Union through a trading company also affiliated with Union. Br. in Opp'n to the Mot. of Pls. U.S. Steel Corp. & Nucor Corp. for J. upon the Agency R. 12 ("Union Br.") (disclosing that Commerce applied the major input rule to JFE Steel). *Decision Mem.* 21. ("We note that Union purchased various forms of steel substrate manufactured by [a] certain affiliated supplier and sold to Union through a certain affiliated supplier during the POR."). In applying the major input rule, under which Commerce is to value the input on the basis of the information available regarding the cost of production, *see* 19 U.S.C. § 1677b(f)(3), Commerce obtained and examined data from the trading company, even though the trading company was not the producer, *Decision Mem.* 21. As it had for Union's purchases from the other affiliated suppliers of steel substrate, Commerce ultimately decided not to make any adjustment to the data on Union's cost of acquisition. *Id.*

Nucor claims that Commerce misapplied the major input rule in requesting and examining only data from the trading company and not cost of production data from the actual producer. Nucor Br. 10-11. Although Nucor acknowledges that application of the major input rule is discretionary, it argues that once Commerce decided to apply the major input rule, it was required to value the input according to information on the actual cost of production. *Id.* at 11 ("In this case, the Tariff Act explicitly states that '[i]f, in the case of a transaction between affiliated persons involving the *production* by one of such persons of a major input to the merchandise . . . then the administering authority may determine the value of the major input on the basis of the information available regarding such *cost of production*.'" (alterations in original) (citing 19 U.S.C. § 1677b(f)(3))).

Defendant argues that Commerce complied with the major input rule by comparing the trading company's average selling price to Union with the "cost of production," which it based on the cost the trading company incurred in purchasing substrate from the producer and the trading company's selling, general, and administrative expenses. Def. Resp. 10. Defendant bases its argument on the language of 19 U.S.C. § 1677b(f)(3), emphasizing that the statute allows valuation "*on the basis of the information available* regarding such cost of production." *Id.* at 9 (quoting 19 U.S.C. § 1677b(f)(3)). According to defendant, Commerce could base its application of the major input rule on data from the trading company because those data were the best information available, in that the record contained no cost of production information from the producer. *Id.* at 10.

The court must consider Commerce's decision based on the reasoning the Department put forth. *Chenery Corp.*, 332 U.S. at 196. The Decision Memorandum, however, contains only

the briefest explanation of the reasoning underlying the Department's decision to request and use the information from the trading company. The Decision Memorandum explains that "[b]ecause this certain affiliated supplier is a trading company, and therefore does not manufacture, we requested and obtained its weighted average *purchase costs* for certain steel substrates during the POR." *Decision Mem.* 21 (emphasis added). There is no explanation in the Decision Memorandum of why Commerce did not seek to obtain production cost information from the producer rather than purchase cost information from the trading company or why it concluded that purchase cost information from the trading company would suffice for application of the major input rule. Defendant, in its response to Nucor's motion, argues that there was no guarantee that the trading company would have responded to an information request, noting that the trading company was not a party to the proceeding, could not have been compelled to provide information, and, in a previous segment of the proceeding, had refused to provide its cost of production data. Def. Resp. 10-11. This explanation appears nowhere in the Decision Memorandum and, therefore, does not constitute a statement of the Department's reasoning for purposes of judicial review.

The Decision Memorandum also states, confusingly, that "[t]he Department determines that Union's purchases of steel substrate from a certain supplier constitute a major input and, therefore, we examined these purchases as directed by section 773(f)(3) of the Act [19 U.S.C. § 1677b(f)(3)] and 19 CFR 351.407(b)(2)." *Decision Mem.* 20-21. The statutory provision it cites, section 773(f)(3) of the Tariff Act, refers to valuing a major input based on the cost of production, but the regulatory provision it cites refers to valuing a major input based on market value. *See* 19 C.F.R. § 351.407(b) ("For purposes of section 773(f)(3) of the Act, the Secretary

normally will determine the value of a major input purchased from an affiliated person based on the higher of . . . (2) the amount usually reflected in sales of the major input in the market under consideration . . . ."). Because the Department gives no indication elsewhere that it intended to value the input based on market value as opposed to cost of production, it is arguable that the court should read the Decision Memorandum as intending to refer to 19 C.F.R. § 351.407(b)(3) ("The cost to the affiliated person of producing the major input.").[3] However, in view of Commerce's own finding that the record did not contain data on the producer's costs, the Department's statement of its reasoning is unsatisfactorily opaque even when read in this way. Due to the deficiencies in the explanation put forth in the Decision Memorandum, the court will remand for reconsideration and explanation the Department's valuation of the steel substrate produced by JFE Steel.

### D. Commerce Did Not Err in Declining to Apply the Major Input Rule to Union's Other Steel Substrate Suppliers

The court next considers Nucor's claim that the Department acted unlawfully in applying the transaction disregarded rule, rather than the major input rule, to Union's affiliated suppliers of steel substrate other than the trading company and the POSCO Group. Nucor Br. 14-18. In the Decision Memorandum, Commerce explained that "[i]n determining whether an input is

---

[3] The regulation provides that:

For purposes of section 773(f)(3) of the Act [19 U.S.C. § 1677b(f)(3)], the Secretary normally will determine the value of a major input purchased from an affiliated person based on the higher of:

(1) The price paid by the exporter or producer to the affiliated person for the major input;

(2) The amount usually reflected in sales of the major input in the market under consideration; or

(3) The cost to the affiliated person of producing the major input.

19 C.F.R. § 351.407(b).

considered 'major,' among other factors, the Department looks at both the percentage of the input obtained from affiliated suppliers (as opposed to unaffiliated suppliers) and the percentage the individual element represents in the product's cost of manufacture (COM)." *Decision Mem.* 20. Commerce found that only purchases of steel substrate from a certain affiliated supplier (*i.e.* the trading company, as discussed previously) qualified as major inputs under 19 U.S.C. § 1677b(f)(3) and 19 C.F.R. § 351.407(b) and therefore applied the major input rule to those purchases of steel substrate. *Decision Mem.* 20. For Union's purchases of steel substrate from all other affiliated suppliers, including in particular the POSCO Group, Commerce applied the transactions disregarded rule. *Id.* Commerce found, pursuant to 19 U.S.C. § 1677b(f)(3), that the purchases from the other affiliated suppliers and the POSCO Group "accounted for insignificant percentages of Union's total purchases of substrate during the POR." *Id.*

As discussed previously, Nucor concedes that the application of the major input rule is discretionary. Nucor Br. 11; *see* 19 U.S.C. § 1677b(f)(3) (providing that the Department, in the circumstance contemplated by the major input provision, "may determine the value of the major input on the basis of the information available regarding such cost of production . . . ."). Nucor's argument is that, despite the discretion afforded by § 1677b(f)(3), Commerce, without adequate explanation, departed in this case from its past practice of aggregating all purchases of the same input from various affiliates when determining whether an input is considered major for purposes of deciding whether to apply the major input rule. Nucor Br. 15. Nucor invokes the established principle that an agency must either conform itself to prior decisions or explain the reasons for its departure. *Id.* Nucor characterizes the decision to depart from this alleged practice as "unsupported by substantial evidence," arguing that the record demonstrates that a large

percentage of Union's steel substrates were purchased from affiliated suppliers and that "steel

substrates are by far the most significant input to the production of CORE . . . ." *Id.* at 17.

Defendant takes issue with Nucor's contention that the Department's decision not to

apply the major input rule to the suppliers in question was a departure from practice. Def.

Resp. 15. Defendant cites a recent administrative review in which "Commerce found that an

input purchased by one affiliated supplier was not significant in relation to the total costs

incurred to produce the merchandise" and "excluded that company's input from the major input

rule while subjecting the same input from another affiliated supplier to the major input rule."

*Id.* at 15-16 (citing *Certain Hot-Rolled Carbon Steel Flat Products from Thailand: Final Results*

*of Antidumping Duty Admin. Review & Partial Rescission of Antidumping Duty Admin. Review*,

72 Fed. Reg. 27,802 (May 17, 2007); Issues & Decision Mem., A-549-817, ARP 5-07, cmt. 3

(May 7, 2007), *available at* http://ia.ita.doc.gov/frn/index.html). Defendant also cites the

preamble accompanying the promulgation of the Department's regulations in support of the

Department's decision to apply the major input rule to fewer than all affiliated suppliers of steel

substrate. *Id.* at 15 (citing *Antidumping Duties; Countervailing Duties; Final rule*, 62 Fed. Reg.

27,295, 27,336 (May 19, 1997) ("The determination of which inputs are 'major' must be made

on a case-by-case basis taking into consideration the nature of the product, its inputs, and the

company-specific information on the record.")).

As defendant's citation to a recent review demonstrates, what Nucor considers to be a

Departmental "practice" has not been uniformly followed. The court, therefore, will not reject

the Department's explanation of its reasons for declining to apply the major input rule to

affiliates other than the POSCO Group and the trading company for failure to explain a departure

from an alleged agency practice. The court also concludes that substantial evidence supports the Department's finding that the affiliated suppliers in question "accounted for insignificant percentages of Union's total purchases of substrate during the POR." *See Decision Mem.* 20.

In conclusion, the court rejects Nucor's claim that Commerce acted contrary to law in declining to apply the major input rule to the affiliated suppliers other than the POSCO Group and the trading company.

E.  Commerce Based its Decision Not to Collapse Union and the POSCO Group Partly on a Finding of Fact that Is Unsupported by Substantial Evidence on the Record

Acting under its regulation, 19 C.F.R. § 351.401(f)(1), Commerce decided not to treat Union and the POSCO Group as a single entity, *i.e.*, not to "collapse" the two affiliated parties, for purposes of the review. *Decision Mem.* 22-23. The regulation provides that Commerce will collapse two affiliated producers if it makes the following two findings of fact: (1) the producers have production facilities for similar or identical products that would not require substantial retooling of either facility in order to restructure manufacturing priorities, and (2) there is a significant potential for the manipulation of price or production. 19 C.F.R. § 351.401(f)(1). According to the regulation, the factors Commerce considers when identifying a "significant potential for the manipulation of price or production" include, but are not limited to: "[t]he level of common ownership;" "[t]he extent to which managerial employees or board members of one firm sit on the board of directors of an affiliated firm;" and "[w]hether operations are intertwined, such as through the sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between the affiliated producers." *Id.* § 351.401(f)(2).

Nucor challenges the decision not to collapse Union and the POSCO Group. Nucor objects, first, that Commerce found in the Preliminary Results that the two companies have production facilities for manufacturing subject merchandise that would not require substantial retooling to restructure manufacturing priorities but then, contrary to the record evidence, reversed that finding in the Final Results. Nucor Br. 20. Nucor contends, second, that Commerce erroneously found that there was no potential for manipulation of price or production. *Id.* at 21. In making this second argument, Nucor takes issue with a finding by Commerce that there were no significant transactions between Union and the POSCO Group during the period of review. *Id.* at 19-20. Nucor's second argument relies on a memorandum of understanding between the POSCO Group and Union's parent company, which Nucor construes to signify "a real and significant potential for manipulation" that meets "the Department's forward-looking test for collapsing two companies." *Id.* at 22; Reply Br. of Nucor Corp. 13; Def. Resp. 20 (discussing the "memorandum of understanding").

Nucor cites a pre-decisional memorandum ("Collapsing Memorandum" or "pre-decisional memorandum") in contending that Commerce, in the Preliminary Results, found that production facilities of Union and the POSCO Group would not require substantial retooling to restructure manufacturing priorities. Nucor Br. 20 (citing *Mem. to Dir., AD/CVD Operations Office 3*, at 4 (Sept. 2, 2008) (Admin R. Doc. No. 4733)). Based on its review of the Collapsing Memorandum, the court concludes that Nucor is correct in its characterization of the finding stated therein. As published, the Preliminary Results make no mention of such a finding. *See Prelim. Results*, 73 Fed. Reg. at 52,267-72. But referring to the Preliminary Results, the Decision Memorandum states that "[t]he Department also found that the POSCO Group and

Union did *not* fit the criteria of 19 CFR 351.401(f), where two or more producers have production facilities for similar or identical products that would not require substantial retooling of either facility to restructure manufacturing priorities." *Decision Mem.* 22 (emphasis added).

The discussions in the Decision Memorandum and the pre-decisional memorandum appear to be inconsistent on what the Department decided in the Preliminary Results as to possible retooling of manufacturing facilities. The Decision Memorandum makes no separate finding on this point; it appears that Commerce considered discussion of this issue unnecessary due to its finding that "there is no significant potential for the POSCO Group and Union to manipulate the price or cost of CORE exported to the U.S." *Id.* at 23. As support for the latter finding, the Decision Memorandum states that "the POSCO Group['s] and Union's operations are not intertwined, such as through common ownership, sharing of board members, sharing of sales information, involvement in production and pricing decisions, the sharing of facilities or employees, or significant transactions between affiliated producers." *Id.* at 22. Invoking the criteria of 19 C.F.R. § 351.401(f)(2), the Decision Memorandum concludes that "there is no evidence that the POSCO Group and Union share sales information, production and pricing decisions, facilities, or employees" and that "[t]here is no evidence on the record of this proceeding which indicates that the POSCO Group and Union are engaged in any significant transactions during the POR." *Id.*

Regarding "the level of common ownership" criterion of 19 C.F.R. § 351.401(f)(2), the record evidence is that common ownership existed between the two entities but also that it was, as defendant argues, a small percentage of ownership. Def. Resp. 21. While the Department's application of the "common ownership" criterion is supported by substantial record evidence, the

same cannot be said of the analysis the Department conducted under the criterion of "significant transactions between the affiliated producers," *see* 19 C.F.R. § 351.401(f). Without elaborating, Commerce found, in the Decision Memorandum, a lack of "any significant transactions" between Union and the POSCO Group during the period of review. *Decision Mem.* 22. Defendant attempts to characterize this finding as one supported by substantial evidence, arguing that "record evidence demonstrated that the POSCO Group made no purchases from Union during the period of review, while Union purchased only a limited amount of input materials from the POSCO Group–accounting for only a small portion of Union's overall purchases." Def. Resp. 19. As discussed previously, defendant concedes that the Department erred in stating in the Decision Memorandum that Union's purchases of steel substrate from the POSCO Group were an insignificant percentage of Union's total steel substrate purchases and describes that finding, as stated in the Decision Memorandum, as an "inadvertent error." *Id.* at 13.

The court holds that the Department erred in stating in the Decision Memorandum its finding that "[t]here is no evidence on the record of this proceeding which indicates that the POSCO Group and Union are engaged in any significant transactions during the POR." *See Decision Mem.* 22. Because that erroneous finding was one of the stated reasons why Commerce decided not to collapse Union and the POSCO Group, the court must remand for reconsideration the decision not to collapse Union and the POSCO Group. On remand, the Department also must revisit the question of whether the two companies have production facilities for manufacturing subject merchandise that would not require substantial retooling to restructure manufacturing priorities. As discussed previously, the Department answered that question in the

affirmative in the pre-decisional memorandum prior to issuance of the Preliminary Results and then, in the Decision Memorandum, mischaracterized its earlier decision.

### III. CONCLUSION AND ORDER

The court will grant defendant's request for a voluntary remand so that Commerce may review and reconsider its finding that adjustments to the valuation of steel substrate that Union obtained from its affiliated suppliers should be disregarded as negligible. On remand, the Department also must review and reconsider its decision not to apply the major input rule to Union's purchases of steel substrate from the POSCO Group, its method of applying the major input rule to value the steel substrate that Union obtained from JFE Steel through purchases from the trading company, and its decision not to collapse Union and the POSCO Group.[4]

### ORDER

Based on the court's consideration of *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Final Results of the Fourteenth Admin. Review & Partial Rescission*, 74 Fed. Reg. 11,082 (Mar. 16, 2009) (the "Final Results"), the motions of plaintiffs under USCIT Rule 56.2 for judgment on the agency record, the submissions of all parties, and all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the Rule 56.2 motion of plaintiff United States Steel Corporation be, and hereby is, GRANTED; it is further

**ORDERED** that the Rule 56.2 motion of plaintiff Nucor Corporation be, and hereby is, GRANTED in part and DENIED in part; it is further

---

[4] The court's order sets forth a schedule for the remand proceeding parallel to that ordered in *Union Steel v. United States*, Court No. 09-130 (Feb. 15, 2011) ("*Union*"), so that the remand redetermination filed pursuant to this Opinion and Order will take into account any other adjustments to redetermined dumping margins resulting from the court's remand order in *Union*, which pertains to the same administrative review that is the subject of this litigation.

**ORDERED** that the Final Results be, and hereby are, remanded to the Department for reconsideration and redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce, on remand, shall review and reconsider its determinations that potential adjustments to the costs of Union Steel Manufacturing Co., Ltd. ("Union") to purchase steel substrate from affiliated suppliers should be disregarded as negligible; it is further

**ORDERED** that Commerce, on remand, shall review and reconsider its decision not to apply the major input rule to Union's purchases of steel substrate from Pohang Iron & Steel Co., Ltd. and Pohang Coated Steel Co., Ltd. (collectively, the "POSCO Group"); it is further

**ORDERED** that Commerce, on remand, shall reconsider its method of applying the major input rule to value the steel substrate that Union obtained from JFE Steel through purchases from a trading company and include a satisfactory explanation for its decisions; it is further

**ORDERED** that Commerce, on remand, shall review and reconsider its decision not to treat Union and the POSCO Group as a single entity for purposes of the administrative review; it is further

**ORDERED** that the Department shall file remand results in compliance with this Opinion and Order that are supported by substantial evidence and otherwise in accordance with law; and it is further

**ORDERED** that the Department shall have ninety (90) days from the date of this Opinion and Order to file its remand results, that plaintiff, plaintiff-intervenor and defendant-intervenors shall have thirty (30) days from the filing of those results to file comments thereon with the court, and that defendant shall have fifteen (15) days thereafter to file any reply to such comments.

                                                                          /s/ Timothy C. Stanceu
                                                                          Timothy C. Stanceu
                                                                          Judge

Dated: February 15, 2011
        New York, New York